No. 13-11692-FF

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

ALMA BRIGHTLEAF, INC.,

Plaintiff-Appellant,

v.

FEDERAL CROP INSURANCE CORPORATION,

Defendant-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

---

BRIEF OF APPELLEE

---

EDWARD J. TARVER
United States Attorney
Georgia Bar No. 698380

SANJAY S. KARNIK
Assistant United States Attorney
Louisiana Bar No. 31215
United States Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422
Attorneys for Appellee

August 2, 2013

Case: 13-11692    Date Filed: 08/02/2013    Page: 2 of 34

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISLOSURE STATEMENT

The undersigned certifies that, to the best of his information and belief, the following is a complete list of interested persons as set forth in 11th Cir. R. 26.1-1:

The Honorable Lisa Godbey Wood, United States District Judge

The Honorable James E. Graham, United States Magistrate Judge

Alma Brightleaf, Inc., Plaintiff-Appellant

Federal Crop Insurance Corporation, Defendant-Appellee

Grubman, Scott R., Assistant United States Attorney

Karnik, Sanjay S., Assistant United States Attorney

McCrea, David, Counsel for Plaintiff-Appellant

Rigby, Julian A.

Tarver, Edward J., United States Attorney

This ___2nd___ day of August, 2013.

_____
Sanjay S. Karnik
Assistant United States Attorney
Attorney for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case.  The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.  *See* Fed. R. App. P. 34(a)(2)(C) ; 11th Cir. R. 34-3(b)(3).

## STATEMENT REGARDING APPENDIX ON APPEAL

Federal Crop Insurance Corporation, Defendant-Appellee in this Appeal, submits a Supplemental Appendix on Appeal pursuant to the Court's General Order 39 of June 26, 2013. Defendant has reviewed the Plaintiff-Appellant's "Record Excerpts" filed with its Brief, and in construing it to be Plaintiff's Appendix on Appeal, elects to submit this Supplemental Index and avoids duplicating any documents filed by Plaintiff therein.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
 Statement .................................................................................. C-1of 1

Statement Regarding Oral Argument ............................................... i

Statement Regarding Appendix On Appeal ..................................... ii

Table of Contents .................................................................... iii-iv

Table of Citations ..................................................................... v-vi

Statement of Jurisdiction ............................................................ vii

Statement of the Issues ............................................................. viii

Statement of the Case ................................................................. 1

I.    Course Of Proceedings And Disposition In The Court Below. ...... 1

II.   Statement Of The Facts ........................................................ 2

      A. Factual Background .......................................................... 2

      B. Administrative Review Process .......................................... 6

      C. The Director Review Determination ................................... 8

           i.      DRD Conclusion Regarding Tornado Damage to Units
                   129 and 133 ........................................................ 9

           ii.     DRD Conclusion Regarding Tropical Storm Damage to
                   United 129 and 133 ............................................. 12

III.  Standards Of Review .......................................................... 13

Summary of the Argument ........................................................ 15

Argument and Citations of Authority .......................................... 16

I.      Summary Judgment Standard ........................................................ 16

II.     The District Court Properly Upheld the DRD's Conclusion that Plaintiff
        Failed to Provide Timely Notice of the Alleged Tornado Damage to Units
        129 and 133 .................................................................................... 17

III.    The District Court Properly Upheld the DRD's Conclusion that there was
        No Tropical Storm Damage to Units 129 and 133 ....................................... 19

Conclusion........................................................................................... 23

Certificate of Compliance and Service.................................................... 24

## <u>TABLE OF CITATIONS</u>

### CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........................................... 16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ...................................................... 16

*Citizens for Smart Growth v. Sec'y for Dep't of Transp.,* 669 F.3d 1203
    (11th Cir. 2012) ................................................................................................. 13

*Fund for Animals, Inc. v. Rice,* 85 F.3d 535 (11th Cir. 1996) .......................... 13, 14

*Gerling Global Reinsurance Corp. of Am. v. Gallagher,* 267 F.3d 1228
    (11th Cir. 2001) ................................................................................................. 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).............. 16

*Sierra Club v. Van Antwerp,* 526 F.3d 1353 (11th Cir. 2008) ............................... 14

*United States v. Four Parcels of Real Prop.,* 941 F.2d 1428 (11th Cir. 1991)....... 16

*Wilderness Watch & Pub. Emp. for Envtl. Responsibility v. Mainella,*
    375 F.3d 1085 (11th Cir. 2004)........................................................................ 13

### STATUTES

5 U.S.C. § 701 ......................................................................................................... 1

5 U.S.C. § 704 ....................................................................................................... 21

5 U.S.C. § 706 .................................................................................................. 13, 15

7 U.S.C. § 1506(d)................................................................................................. vii

7 U.S.C. § 1508(j)(2)(A) ...................................................................................... vii

7 U.S.C. § 6999 ................................................................ vii, 1

28 U.S.C. § 1291 .................................................................. vii

## RULES

11th Cir. R. 26.1-1 ........................................................... C1 of 1

11th Cir.R. 34-3(b)(3)................................................................ i

Fed. R. App. P. 32(a)(5) ........................................................ 24

Fed. R. App. P. 32(a)(6) ........................................................ 24

Fed. R. App. P. 32(a)(7)(B) .................................................... 24

Fed. R. App. P. 34(a)(2)(C)....................................................... i

Fed. R. Civ. P. 56(a) ............................................................. 16

## OTHER

7 C.F.R. § 29.9205................................................................ 2

7 C.F.R. § 457.8 ............................................................ 8, 9, 10

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case pursuant to the Federal Crop Insurance Act, specifically 7 U.S.C. §§ 1506(d), 1508(j)(2)(A), and 6999, as well as the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*

Jurisdiction in this Court is found in 28 U.S.C. § 1291, which provides that the Court of Appeals shall have jurisdiction of appeals from final decisions of the district courts of the United States.

## STATEMENT OF THE ISSUES

I.    Was Defendant's final agency decision finding that Plaintiff failed to timely report alleged tornado damage to two tobacco crop units arbitrary, capricious, an abuse of discretion, or contrary to law?

II.    Was Defendant's final agency decision finding that the two units were not damaged by a subsequent tropical storm arbitrary, capricious, an abuse of discretion, or contrary to law?

## STATEMENT OF THE CASE

I. **COURSE OF PROCEEDINGS AND DISPOSITIONS IN THE COURT BELOW.**

On September 7, 2011, Plaintiff, Alma Brightleaf, Inc., filed this action in the United States District Court for the Southern District of Georgia against the Federal Crop Insurance Corporation ("FCIC"), seeking judicial review of a Director Review Determination, constituting a final agency decision by the United States Department of Agriculture ("USDA") – National Appeals Division,[1] resulting in the denial of indemnity payments on a crop reinsurance policy. Dkt #1 (Complaint); Dkt. #14-1 (DRD).

Pursuant to 7 U.S.C. § 6999, a final determination of the NAD "shall be reviewable and enforceable by a district court of competent jurisdiction in accordance with Chapter 7 of Title 5[,]" e.g., the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*

Defendant filed its Answer on February 28, 2012. Dkt. #10. The district court granted the parties Joint Motion to Set Briefing Schedule on March 6, 2012. Dkt. ##12, 13. Defendant filed a Motion for Summary Judgment on May 7, 2012.

---

[1] The Director Review Determination (hereinafter "DRD") was issued on September 8, 2010, by USDA Deputy Director M. Terry Johnson. DRD at p. 6. This document serves as the final order of the Department of Agriculture and concluded all administrative processing of Plaintiff's appeal of the Hearing Officer's determination. *See* Dkt. #14-2 (Letter from M. Terry Johnson to Attorney McCrae, September 8, 2010).

1

Dkt. #14. On June 15, 2012, Plaintiff filed a response in opposition to Defendant's summary judgment motion. Dkt. #18. On the same day, Plaintiff filed its own Motion for Summary Judgment. Dkt. #19.

On March 19, 2013, the district court issued an order granting Defendant's Motion for Summary Judgment and denying Plaintiff's summary judgment motion. Dkt. #22. On the next day, the district court entered a judgment of dismissal in Defendant's favor. Dkt. #23. Plaintiff filed a Notice of Appeal on April 18, 2013. Dkt. #24.

## II.    STATEMENT OF THE FACTS.

### A.    Factual Background

Plaintiff Alma Brightleaf, Inc. is a corporation organized under the laws of the State of Georgia. Complaint ¶ 1. Its sole shareholder is Julian A. Rigby. *Id.* at p. 1; DRD at p. 2. In 2008, Plaintiff's farming operation included 116.24 acres of tobacco on Unit 129 and 38.08 acres of tobacco on Unit 133 (hereinafter collectively referred to as "the units"). DRD at p. 2; Complaint ¶ 5.[2] The tobacco was covered by a crop insurance policy that was first obtained by Plaintiff in 2004 from Producers Agriculture Insurance (hereinafter "insurer"), which had a standard

---

[2]  Federal regulation requires that each individual farm be assigned an identification number, or a "farm serial number." 7 C.F.R. § 29.9205. In this case, Unit 129 of Plaintiff's farm had a farm serial number of 2639, and Unit 133's serial number was 3531. The exhibits attached to Defendant's motion for summary judgment filed in the district court may refer to either the Unit number or the farm serial number, but Defendant's Brief will refer herein to the Unit number (129 and/or 133).

reinsurance agreement with the FCIC. DRD at p. 2; Complaint ¶ 5; *see also* Dkt. #14-3 (Producers Ag. Schedules of Insurance and Policy Confirmation).[3]

On July 28, 2008, a tornado occurred in the area where Plaintiff's farming operation is located. DRD at p. 2; Dkt. #14-4 (Letter from Connie C. Johnson, dated January 13, 2009). Mr. Rigby claims to have made a claim of loss from damage to his tobacco crop from this tornado.[4] Plaintiff began harvesting its tobacco on Units 129 and 133 on July 17, 2008, and completed its harvest on August 11, 2008. DRD at p. 2; Dkt. #14-7 (Administrative Review Decision for Alma Brightleaf, dated Nov. 12, 2009, at p. 8). Plaintiff's tobacco crop on those units was harvested before it could be inspected by the insurer's loss adjuster. *Id.*

On August 25, 2008, a tropical storm damaged tobacco located on other units of Plaintiff's land. DRD at p. 2; Dkt. #14-8 (Producers Ag. Ins. Loss Information). That storm did not damage the tobacco on Units 129 and 133

---

[3] The FCIC is an agency of the United States Department of Agriculture, and is also a corporation established pursuant to 7 U.S.C. § 1503. Complaint ¶ 2.

[4] According to Mr. Rigby, the tornado damaged his tobacco crop and, after observing the damage on either July 27 or July 28, 2008, he called his insurance agent, an agent of Producers Agriculture Insurance and not a USDA employee, but "received no answer." DRD at p. 2; Dkt. #14-5 (Affidavit of Julian A. Rigby, dated March 24, 2010, ¶ 3).[4] Mr. Rigby claims that, on the same day, he traveled to the insurer's office and reported the crop damage. DRD at p. 2; Rigby Affidavit ¶ 3. According to Mr. Rigby, someone at the office told him that "[his] claim was noted in writing and that an adjuster would be contacting [him]." DRD at p. 2; Rigby Affidavit ¶ 3. However, one of the insurer's agents informed the insurer's loss adjuster that "they did not get a notice called in by [Mr. Rigby]." DRD at p. 2; Dkt. #14-6 (E-mail from Dale Rackley to John Bishop).

3

because by the time the tropical storm occurred, the entire tobacco crop on those acres had already been harvested. DRD at p. 2; Rigby Affidavit ¶ 3 ("On either August 25th or August 28th, 2008, I reported another loss due to a Tropical Storm on an entirely different farm unit. This loss had nothing to do with the July 25th loss."). On August 26, 2008, Mr. Rigby filed a written notice of loss with his insurer for the tropical storm damage. DRD at p. 2; Loss Information at p. 1; Rigby Affidavit ¶ 3.

Between September 3 and September 5, 2008, an insurance adjuster, along with representatives from the Risk Management Agency ("RMA"),[5] inspected Plaintiff's cropland for tropical storm damage. DRD at p. 2; Dkt. #14-9 (Report for First Inspection on Alma Bright Leaf at p. 1). The RMA inspection notes losses to other units of Plaintiff's land but further noted that Units 129 and 133 were harvested prior to the tropical storm and that although these units "reportedly sustained tornado damage . . . [a]ny evidence of tornado is impossible to discern due to mechanical damage to the remaining stalks."[6] *Id.;* DRD at p. 2. On September 22, 2008, an adjuster gave Plaintiff verbal consent to destroy all of the tobacco located on its crop land. DRD at p. 3; Dkt. #14-10 (Adjuster's Special Report dated Sept. 22, 2008).

---

[5] The Risk Management Agency ("RMA") administers and oversees all programs authorized under the FCIC.

[6] According to the DRD, these notes are referring to the units in question (133 and 129), although they are incorrectly identified in the inspection notes. DRD at p. 2.

4

On February 2, 2009, RMA requested that the adjuster answer some questions about the alleged tornado damage "so we can have documentation in the file." DRD at p. 3; Dkt. #14-11 (E-mail from John Bishop (RMA Risk Management Specialist) to Lewis Igou (adjuster), dated Feb. 2, 2009). In relation to Unit 129, RMA's e-mail asked whether Plaintiff had provided notice of the loss because the unit had been harvested completely by the time the inspection for the tropical storm damage took place. DRD at p. 3; Dkt. #14-10 at p. 1 of 2. RMA's e-mail also asked if notice of the alleged tornado damage had been given in writing, and if the insurer had inspected the unit after notice was given to verify the damage and appraise the crop. *Id.*

Adjuster Lewis Igou responded to RMA's e-mail two days later, on February 4, 2009. Dkt. #14-12 (Memo from Lewis Igou to John Bishop, dated Feb. 4, 2009). In his response, the adjuster stated that, prior to August 26, 2008 (the date on which the adjuster inspected Plaintiff's land for tropical storm damage), Plaintiff had not provided any notice of the alleged tornado damage to Units 129 and 133. *Id.* at p. 1; DRD at p. 3. The adjuster went on to state that, during his August 26 inspection for tropical storm damage, there was no unharvested tobacco on Units 129 and 133 and, for the most part, the stalks were intact except for one field and some strips in two other fields that had been harvested with a stripper machine. *Id.*

On April 3, 2009, a regional RMA Director notified Plaintiff, by letter, that indemnities for the alleged tornado damage on Units 129 and 133 would not be paid because a timely notice of loss was not filed, and representative samples of the crop were not left for inspection. DRD at p. 3; Dkt. #14-13 (Letter from Michael R. Moore, RMA Director, to Alma Brightleaf Inc., dated April 3, 2009). In that letter, Plaintiff was informed of the requirement to provide notice within 72 hours of discovering the tornado damage. The letter further stated that the first notice that Plaintiff provided was approximately twenty-eight days after the tornado occurred. *Id.* at pp. 2-3; DRD at p. 3.

### B.    Administrative Review Process

On April 27, 2009, Plaintiff requested an administrative review of the RMA's decision. DRD at p. 3; Dkt. #14-14 (Letter from Julian A. Rigby to William Murphy, Deputy Administrator for Insurance Service, dated April 27, 2009). On November 12, 2009, the RMA Acting Deputy Administrator for Insurance Services ("DAIS") determined that the regional decision was not supported. DRD at p. 3; Dkt. #14-15 (Administrative Review Decision for Alma Brightleaf, Inc., dated November 12, 2009).[7] However, after reviewing the documentation again, the DAIS rescinded her initial decision and re-issued a new

---

[7] Although the DRD lists the date of this decision as November 11, 2009, the actual document lists the date as November 12, 2009. Although the exact date is immaterial to this case, this Motion will list the date as November 12, the date stated on the letter.

6

decision on December 23, 2009.   DRD at p. 3; Dkt. #14-16 (Administrative Review Decision for Alma Brightleaf, Inc., dated December 23, 2009).

In the December 23 superseding decision,  the DAIS found that (1) Plaintiff did not notify the insurer within 72 hours of the tornado damage; (2) Plaintiff did not confirm in writing the notice of loss of tornado damage within 15 days; (3) the units in question could not have been damaged by the tropical storm because all of the tobacco had been harvested prior to the storm; (4) Plaintiff did not leave representative samples of the tobacco of the units in question for inspection; and (5) Plaintiff did not leave all stalks and stubble intact until either written consent was given to destroy or until 30 days after the end of the insurance period. *Id.*

On January 21, 2010, Plaintiff appealed the DAIS decision to the Regional Assistant Director of the National Appeals Division.   DRD at p. 3; Dkt. #14-17 (Letter from Julian A. Rigby to Regional Assistant Director (National Appeals Division), dated January 21, 2010).   At a pre-hearing conference before a National Appeals Division ("NAD") Hearing Officer on March 9, 2010, Plaintiff, represented by counsel, elected to proceed with a record review.   DRD at p. 3.

On May 10, 2010, the Hearing Officer issued a determination that affirmed in part and reversed in part the DAIS' adverse decision.   DRD at p. 3; Dkt. #14-18 (Appeal Determination of May 10, 2010).   In that determination, the Hearing Officer found that Plaintiff did not timely file a notice of loss for tornado damage

7

to Units 129 and 133, and that Unit 133 was not damaged by the tropical storm. *Id.* at pp. 3-4; DRD at pp. 3-4. Also in the May 10 determination, the Hearing Officer found that Plaintiff did timely file a notice of loss on Unit 129 for damage from the tropical storm. Appeal Determination at p. 4; DRD at p. 4. Both parties filed requests for Director Review. DRD at p. 4; Dkt. #14-19 (Letter from William J. Murphy to Roger Klurfield, dated June 1, 2010, requesting review of Hearing Officer's determination as to Unit 129); Dkt. #14-20 (Letter from David McCrae to National Appeals Division Director, dated June 16, 2010, requesting review of Hearing Officer's determination as to Unit 133).

### C.   The Director Review Determination

On September 8, 2010, the Deputy Director issued his Director Review Determination. DRD at p. 1. In the DRD, the Deputy Director noted RMA's contention that all of the tobacco on Unit 129 had been harvested prior to the tropical storm and therefore could not have been damaged by that storm. DRD at p. 4. RMA also contended that Plaintiff was required to leave unharvested representative strips that were five feet wide and extended the entire length of each field in the unit so that the insurer could assess the tornado damage, if any. *Id.*

In the DRD, the Deputy Director also noted Plaintiff's claim that, pursuant to a stipulation entered into between the parties, the only issue was whether there was compliance with 7 C.F.R. § 457.8(b)(14)(g) (providing that all notices that

8

must be received within 72 hours may be made by telephone or in person to a crop insurance agent but must be confirmed in writing within 15 days). *Id.* Plaintiff claimed that the stipulation arose from "a statement by the representative of [RMA] . . . that a written document by an employee of the agent was found that showed [Rigby] did come by the office that day after the loss to report damage to the crop." DRD at p. 4. Tellingly, the Deputy Director noted that although Plaintiff "combed the record," he could not locate the document to which he referred. *Id.* Despite not being able to locate the document, Plaintiff argued that the written document proved that timely notice was provided. *Id.* at pp. 4-5. Plaintiff further contended that written confirmation of the notice was evidenced by the Adjuster's special report, dated September 22, 2008, which gave consent to destroy the tobacco stalks. *Id.* Plaintiff also argued that Mr. Rigby's affidavit established that timely notice was provided. *Id.*

i.     **DRD Conclusion Regarding Tornado Damage to Units 129 and 133**

The Deputy Director upheld the Hearing Officer's finding that Plaintiff failed to provide timely notice of its loss related to the alleged tornado damage. DRD at p. 6. The Deputy Director held that, "[u]nder the Insurance Policy, [Plaintiff] had to notify Insurer of the loss within 72 hours of initial discovery of damage (but not later than 15 days after the end of the insurance period), by unit, for each insured crop." *Id.*    In support, the DRD cites 7 C.F.R. §

9

457.8(b)(14)(a)(2).[8]    DRD at p. 5.    The Deputy Director went on to hold that "[n]otices required to be given immediately could be by telephone or in person and confirmed in writing." *Id.* In support of this proposition, the DRD cites 7 C.F.R. § 457.8(b)(33)(a).[9]

"Thus," the Deputy Director held, "[Alma Brightleaf] had to notify Insurer by telephone or in person within 72 hours of initial discovery of the tornado damage and confirm the loss in writing within fifteen days." DRD at p. 5.    The Deputy Director found no evidence that this required notice was given. *Id.* The Deputy Director noted that, according to Plaintiff, at the prehearing, "RMA stated that it found a document generated by Insurer showing that [Rigby] reported the loss in person the day after the tornado occurred." *Id.* The Deputy Director found, however, that the alleged document was nowhere in the case record, and that a "careful review of the pre-hearing audio reveals that no such statement or stipulation occurred." *Id.*

---

[8]    Despite its awkward structure, 7 C.F.R. § 457.8 contains a "section" 14, which is entitled "Duties in the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop of Acreage."    Subsection (b)(1) provides:  "For a planted crop, when there is damage or loss of production, you must give notice, by unit, *within 72 hours* of your initial discovery of damage or loss of production (but not later than 15 days after the end of the insurance period, even if you have not harvested the crop)" (emphasis added).    The relevant sections of 7 C.F.R. § 457.8 are provided in Dkt. #14-21.

[9]    Subsection (b)(4) of the above-cited section provides: "All notices required in this section that must be received by us within 72 hours may be made by telephone or in person to your crop insurance agent *but must be confirmed in writing within 15 days*." Dkt. #14-21 (emphasis added).

As to Plaintiff's contention that the September 22, 2008, adjuster's report, wherein the adjuster states that he gave verbal consent to Plaintiff to destroy the tobacco, is written confirmation of the loss, the Deputy Director concluded that the report could not be construed as such written confirmation because it provided no information about the cause of loss or the damage. *Id.* The Deputy Director continued: "The report does not reference a tornado as a cause of loss, the date of the tornado, or the type of damage; there also is no specific reference to the Units in the report." *Id.*

Finally, the Deputy Director held that Mr. Rigby's affidavit did not prove that timely notice was provided. *Id.* The Deputy Director noted that, according to his affidavit, Mr. Rigby observed damage on "either July 27[th] or 28, 2008," and that he called his insurance agent but "received no answer." *Id.* (quoting Rigby Affidavit). According to the affidavit, on that same day, Mr. Rigby reported the damage at the insurer's office and was told that "[his] claim was noted in writing and that an adjuster would be contacting [him]." *Id.* The Deputy Director concluded that there was no evidence in the case record before him to corroborate these statements made in Mr. Rigby's affidavit. *Id.* In support of this conclusion, the Deputy Director cited the Hearing Officer's finding that Plaintiff did not notify the insurer of the tornado damage until late August; that the insurer stated that Plaintiff "did not get a notice called in" after the tornado occurred [Dkt. #14-6];

11

and that there were no documents generated by the insurer showing that Mr. Rigby visited the office that day, or that the claim was "noted" in writing. DRD at pp. 5-6.

The Deputy Director held that "the substantial evidence in the record shows that [Plaintiff] did not notify Insurer in person or by telephone within 72 hours of initial discovery of the tornado damage and did not confirm the loss in writing within fifteen days." *Id.* at 6. Accordingly, the Deputy Director upheld the Hearing Officer's determination that Plaintiff did not timely file a notice of loss for tornado damage. *Id.*

### ii.    DRD Conclusion Regarding Tropical Storm Damage to Units 129 and 133

In the DRD, the Deputy Director noted that Plaintiff only claimed that a tornado damaged Units 129 and 133. DRD at p. 5. In support of this finding, the DRD cites Mr. Rigby's affidavit, which was presented as a hearing exhibit. In that affidavit, Mr. Rigby stated that he observed damage to Units 129 and 133 on July 27 or July 28, and then goes on to state: "On either August 25th or August 28th, 2008, I reported another loss due to a Tropical Storm *on an entirely different farm unit*. This loss *had nothing to do with the July 25[th] loss*. I had already reported the earlier loss." Rigby Affidavit ¶ 3 (emphasis added).

Based on these statements from Mr. Rigby, the Deputy Director concluded that the Hearing Officer's conclusion that the tropical storm damaged Unit 129 was

12

incorrect, and reversed that part of the Hearing Officer's determination. DRD at p.

5. The Deputy Director upheld the Hearing Officer's conclusion that the tropical

storm did not damage Unit 133. *Id.* at p. 6.

## III.  STANDARDS OF REVIEW.

This Court reviews the granting of summary judgment de novo and applies

the same legal standards as the district court. *Citizens for Smart Growth v. Sec'y*

*for Dep't of Transp.,* 669 F.3d 1203, 1210 (11th Cir. 2012) (citing *Wilderness*

*Watch & Pub. Emp. for Envtl. Responsibility v. Mainella,* 375 F.3d 1085, 1087-88

(11th Cir. 2004). When confronted with claims brought under the APA, this Court

may only set aside agency action that is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." *Id.* (quoting 5 U.S.C. §

706(2)(A)). This standard is "exceedingly deferential." *Fund for Animals, Inc. v.*

*Rice,* 85 F.3d 535, 541 (11th Cir. 1996).

> To determine whether an agency decision was arbitrary and
> capricious, the reviewing court must consider whether the decision
> was based on a consideration of the relevant factors and whether there
> has been a clear error of judgment. This inquiry must be searching
> and careful, but the ultimate standard of review is a narrow one.
> Along the standard of review continuum, the arbitrary and capricious
> standard gives an appellate court the *least* latitude in finding grounds
> for reversal; administrative decisions should be set aside in this
> context only for substantial procedural or substantive reasons as
> mandated by statute, not simply because the court is unhappy with the
> result reached.

*Id.* at 541-42 (quotation marks and ellipses omitted).  "The court's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Sierra Club v. Van Antwerp,* 526 F.3d 1353, 1360 (11th Cir. 2008) (citations omitted).

## SUMMARY OF THE ARGUMENT

The district court properly determined that Defendant's final agency decision set forth in the September 8, 2010, Director Review Determination, denying indemnity payments to Plaintiff as to Units 129 and 133, was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Deputy Director's conclusion in the DRD that Plaintiff failed to file a timely notice of loss for alleged tornado damage was properly upheld. Plaintiff did not meet the time requirements under federal regulations for reporting crop damage. The Deputy Director's conclusion that Units 129 and 133 were not damaged by a tropical storm was also properly upheld. The DRD correctly determined that Units 129 and 133 were already harvested by the time the tropical storm occurred.

These decisions set forth in the DRD were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. Therefore, the district court's order of March 19, 2013, granting summary judgment in favor of Defendant should be affirmed. Dkt. #22.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.  Summary Judgment Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), and draw all justifiable inferences in his or her favor. *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-34 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson,* 477 U.S. at 257.

16

When, as here, the parties have filed cross-motions for summary judgment, the applicable Rule 56 standard is not affected. *See Gerling Global Reinsurance Corp. of Am. v. Gallagher,* 267 F.3d 1228, 1233 (11th Cir. 2001).

## II. The District Court Properly Upheld the DRD's Conclusion that Plaintiff Failed to Provide Timely Notice of the Alleged Tornado Damage to Units 129 and 133.

The Deputy Director found that Plaintiff failed to file a timely notice of loss for tornado damage. DRD at p. 6. This finding was based on the fact that the insurance agent told the insurance adjuster that it did not get a notice called in after the tornado occurred [Dkt. #14-6], and that there were no documents generated by the insurer to show that Mr. Rigby visited their office that day, or that the claim was "noted" in writing. *Id.* This conclusion is also supported by the insurance adjuster's February 4, 2009, memo to RMA representative Bishop, in which the adjuster states that Plaintiff gave a notice of loss on August 25, 2008 (after the tropical storm), but that prior to this, there had been no loss notice. Dkt. #14-12 at p. 1 (responses to Questions 1, 2 & 3).[10] Because the policy requires that notice of loss be made within 72 hours, and that the notice may be made by telephone or in

---

[10]  As discussed above, the insurance agent's memorandum was in response to questions posed by Mr. Bishop in his February 2 e-mail. *See* Dkt. #14-11.  Question 1 in that e-mail asked: "When did the insured provide notice of loss on FSN 2639? (This is the farm on Scuffletown Road that Mr. Rigby said had tornado (wind) damage[)]. Harvest was complete on this unit at the time of our inspection." *Id.* at p. 1.  Question 2 in that e-mail asked: "Was notice of the tornado damage provided in writing by the insured?  If so, provide a copy of the notice.  If not, provide what was placed in the file at the time to document the loss."  In response to these questions, the insurance adjuster stated that the first notice of loss the insurance company received was on August 25, and that there were no prior loss notices. Dkt. #14-12 at p. 1.

person to the insurance agent but must be confirmed in writing within 15 days, the evidence in the record supports the Deputy Director's finding that Plaintiff failed to make such timely notice.

Plaintiff argued that, at the prehearing, RMA stated that it found a document generated by the insurer showing that Mr. Rigby reported the loss in person the day after the tornado occurred. DRD at p. 5. The Deputy Director properly rejected this claim, however, as this alleged document was not in the record and, after a careful review of the prehearing audio, the Deputy Director concluded that no such statement was made. *Id.* The Deputy Director also rejected Plaintiff's argument that the September 22, 2008, adjuster's report [Dkt. #14-10], wherein the adjuster states that he gave verbal consent to Plaintiff to destroy the tobacco, constitutes written confirmation of the loss. DRD at p. 5. The Deputy Director correctly observed that the report did not reference a tornado as the cause of loss, did not state the date of the tornado or the type of damage, and did not make any specific reference to the units in question. *Id.*

Finally, the Deputy Director rejected Plaintiff's argument that Mr. Rigby's affidavit established timely notice. DRD at p. 5. The reason for this rejection is that there was no evidence in the record to corroborate Mr. Rigby's statements that he provided timely notice, and that the evidence actually contradicted these statements. *Id.* at pp. 5-6.

18

Although in his Brief before this Court, Plaintiff continues to argue that Mr. Rigby's affidavit states that he reported his alleged tornado loss the day after it occurred [Plf.'s Brief at 15-16], the Deputy Director found that this testimony was contrary to the remainder of the evidence before him. Plaintiff also continues to argue that the September 22, 2008, report falls within the 15-day notice of loss period. Plf.'s Brief at 14. The district court noted and rejected this argument, finding no error in the DRD's determination that this Special Report [Dkt. #14-10] did not constitute a written confirmation of tornado loss. Dkt. #22 at p. 9.

The DRD conducted a complete review of the record and all hearing audio transcripts, and could find no support for Mr. Rigby's contention in his affidavit that he provided notice of any tornado loss within 72 hours or 15 days of the tornado. DRD at pp. 5-6. The USDA can only indemnify proof of losses that are timely and properly documented. Because the Deputy Director's finding that Plaintiff failed to make a timely loss notice after the alleged tornado damage was not arbitrary, capricious, or contrary to the law, but was instead supported by the evidence before the Deputy Director, the district court properly upheld the DRD's decision.

**III.    The District Court Properly Upheld the DRD's Conclusion that there was No Tropical Storm Damage to Units 129 and 133.**

The Deputy Director's first finding was that Units 129 and 133 were not damaged by the August 25 tropical storm. DRD at p. 5. This finding was based on

19

Mr. Rigby's own affidavit, in which he states that he observed damage to Units 129 and 133 on July 27 or July 28 (after the tornado), and then goes on to state: "On either August 25th or August 28th, 2008, I reported another loss due to a Tropical Storm *on an entirely different farm unit*. This loss *had nothing to do with the July 25th loss*. I had already reported the earlier loss." Dkt. #14-5. Rigby Affidavit ¶ 3 (emphasis added). Moreover, in his memo to RMA representative John Bishop dated February 4, 2009 [Dkt. #14-12], the insurance adjuster who came out to inspect Plaintiff's farm after the tropical storm noted that, at that time, there was no unharvested tobacco on Units 129 and 133. DRD at p. 3; Dkt. #14-12 at p. 1 (response to Question 4). The adjuster also states that he observed water damage to every farm but Units 129 and 133 because "[t]hese 2 farms were harvested at that time." *Id.* at p. 1 (response to Question 1). This is further evidence to support the Deputy Director's finding that Units 129 and 133 could not have been damaged by the tropical storm, because they were harvested before the storm occurred.

In its brief before this Court, Plaintiff for the first time argues that "Mr. Rigby's affidavit sets out different events that damaged his crops: tornado damage and damage from a tropical storm." Plf.'s Brief at 17. While it is true that Mr. Rigby has alleged that both a tornado and a tropical storm generally caused damage to his crops (the word "crops" being a very general description), his own

20

affidavit more specifically confirms that the tropical storm loss he was claiming was in regards to "an entirely different farm unit[]" from that of the units he alleges was damaged by the tornado, i.e. Units 129 and 133.  Furthermore, Plaintiff has already admitted, and the district court properly noted, that "[t]he Defendant's assertion that the Director should be upheld for finding no Tropical Storm damage to Units 129 and 133 is correct but irrelevant." Dkt. #18 at p.4; Dkt. #22 at p.7.[11]

Moreover, Plaintiff's general argument that the DRD arbitrarily or capriciously reversed the Hearing Officer's decision of May 10, 2010 [Dkt. #14-18] is without merit, as Plaintiff presents no legal support for the notion that a lower administrative decision should be valued over a final agency decision such as a DRD.  Plf.'s Brief at 16-18.  "A preliminary, procedural, or intermediary agency action or ruling not directly reviewable is subject to review *on the review of the final agency action.*"  5 U.S.C. § 704 (emphasis added).  In essence, every lower decision is not reviewed as its own decision, but can merely be taken into account when reviewing the agency's final decision, which is in this case the DRD. This Court should apply the APA's "arbitrary and capricious" standard only to the DRD, as all of the lower administrative decisions in this case may only be reviewed in context with the DRD's finding.

---

[11] The district court's Order quoting Plaintiff's statement therein mistakenly states "Units 129 and 129".

Mr. Rigby's affidavit states that the tropical storm loss he claimed was for entirely different units, and not for Units 129 and 133. Furthermore, the DRD concluded that these units were already harvested prior to the tropical storm. The RMA noted water damage to other units on Plaintiff's cropland, but had no documentation of loss to Units 129 and 133, as they were already harvested. The Deputy Director's finding that Units 129 and 133 were not damaged by the tropical storm is not arbitrary, capricious or otherwise contrary to law. The district court properly upheld this decision.

## CONCLUSION

For the foregoing reasons, the district court's order of March 19, 2013, granting summary judgment in favor of Defendant-Appellee should be affirmed. Dkt. #22.

This 2nd day of August, 2013.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY
Georgia Bar No. 698380

SANJAY S. KARNIK
Assistant United States Attorney
Louisiana Bar No. 31215
Post Office Box 8970
Savannah, GA  31412
(912) 652-4422
(912) 652-4227 fax

23

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word 2010.

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,463 words as calculated by the word processing system used to prepare the brief.

Today, this brief was uploaded to the Court's website, and a copy was sent by first class mail, postage prepaid, to:

David McCrea, Esq.
P.O. Box 412
Alma, Georgia 31510

This 2nd day of August, 2013.

Sanjay S. Karnik
Assistant United States Attorney
Louisiana Bar No. 31215
Sanjay.Karnik@usdoj.gov

United States Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422

24